## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DELANO J. MOFFETT,               )
                                 )
              Plaintiff,         )
                                 )
         v.                      )        Civil Action No. 05-199 Erie
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social Security, )
                                 )
              Defendant.         )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN, J.

Plaintiff, Delano J. Moffett, commenced the instant action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Moffett filed an application for DIB on October 9, 2002, alleging that he was disabled since December 31, 2000 due to a herniated disc and lower back pain (Administrative Record, hereinafter "AR", at 51-53, 65). His application was denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 35-39).

Following a hearing held on February 18, 2004, the ALJ in a written decision dated March 19, 2004, found that Moffett was not entitled to a period of disability or disability insurance benefits under the Act (AR 15-22). His request for review by the Appeals Council was denied (AR 4-7), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will grant Defendant's motion and deny Plaintiff's motion.

## I. BACKGROUND

Moffett was born on June 4, 1966 and was thirty-seven years old on the date of the ALJ's decision (AR 16, 51). He was a high school graduate, and had past work experience as a foundry

laborer, injection molder, groundsman, non-destructive testing assistant, and asbestos removal laborer (AR 16, 66, 71).

Moffett has a history of back pain since 1996 (AR 116).  On July 31, 2002, Moffett presented to the emergency room for complaints of back pain (AR 101-102).   He was prescribed medication and discharged in good condition (AR 101).

On September 28, 2002, a lumbar MRI showed degenerative disc disease at the L5-S1 level with broad-based disc bulging, a probable very small disc protrusion, and central and lateral spinal canal stenosis at L5-S1 (AR 92-93).

Moffett was evaluated by Kevin Walter, M.D., a neurologist, on December 12, 2002 pursuant to the request of Moffett's primary care physician, R. Anthony Snow, M.D. (AR 129-130).  Moffett reported back pain since 1996, but claimed it had recently worsened (AR 129).  He complained of low back pain radiating down both legs to the soles of his feet (AR 129).  On physical examination, Dr. Walter reported that his motor examination demonstrated 5/5 strength bilaterally, his sensory examination was intact, and he had a negative straight leg raise test (AR 117).  He did have some difficulties standing on his toes (AR 129).  An MRI scan showed moderate to severe stenosis at L5-S1 due to ligamentous hypertrophy, as well as a broadbased L5-S1 disc bulge (AR 130).  Dr. Walter recommended an L-5 laminectomy, a bilateral S1 foraminotomy, and an L5 to S1 diskectomy (AR 117, 130).

On December 17, 2002, Moffett underwent the recommended surgery (AR 108-110). The following day he noticed an improvement in his leg pain and exhibited 5/5 strength bilaterally in his lower extremities (AR 105).  His hospital course was uncomplicated, and Physical Therapy felt he was safe to be discharged home with no need for further therapy (AR 105).  At the time of discharge, he was ambulating without difficulty (AR 105).  Dr. Walter instructed Moffett to avoid heavy lifting, strenuous activity, and bending or sitting for prolonged periods of time (AR (AR 105).

Moffett was seen by Dr. Snow, his primary care physician, on January 10, 2003 for

follow-up after his back surgery (AR 155).  He reported less pain when walking, but claimed a new pain radiated down his left testicle and down his left leg (AR 155).  Dr. Snow reported his incision was well healed, and prescribed Lortab for his pain (AR 155).

Moffett underwent a physical consultative examination on February 3, 2003 performed by John Ferretti, D.O. pursuant to the request of the Commissioner (AR 118-123).  Moffett reported that he continued to have discomfort with bilateral leg pain, left greater than right (AR 118).  On physical examination, Dr. Ferretti noted that he did not use an assistance device, but had an antalgic gait favoring his left side (AR 119).  He had difficulty lifting his legs from a seated position due to reported scrotal discomfort (AR 119).  He was able to heel and toe walk, but had more difficulty toe walking (AR 119).  He was unable to fully squat, although he was able to go from the waiting room chair to the examining table (AR 119).  Dr. Ferretti found his upper motor strength was 5/5 bilaterally, and his lower leg motor strength was 4/5 on the left and 5/5 on the right (AR 119).  Moffett had no evidence of muscle atrophy, joint effusion or discoloration (AR 119).  Dr. Ferretti formed an impression of chronic back pain, status post recent back surgery (AR 119).

Dr. Ferretti completed a medical source statement of Moffett's ability to perform work-related physical activities (AR 122-123).  He opined that Moffett could lift two to three pounds, which he noted was a restriction imposed by his operating surgeon (AR 122).  He further opined that Moffett could stand and walk for one hour or less and sit for one hour in an eight-hour workday, because he "subjectively gets pain" (AR 122).  He concluded Moffett could occasionally perform postural maneuvers, since he was "post operative and [had] not been discharged by [his] surgeon" (AR 123).

When seen by Dr. Snow on February 11, 2003, Moffett reported back pain which radiated down to his groin, aggravated by sitting for any length of time (AR 154).  Dr. Snow stated that Moffett had "vague tenderness" in the lumbosacral spinal area, left more than right (AR 154).  He assessed him with chronic back pain and prescribed Celebrex (AR 154).

3

Moffett returned to Dr. Walter on February 20, 2003 for follow-up (AR 125-126). He complained of severe pain radiating to his left leg and groin, which had worsened since shoveling snow in his driveway (AR 125). Dr. Walter reported that his wound was well healed, he had good strength bilaterally in his lower extremities, and his gait was essentially normal (AR 125). His left testicle was quite tender to touch and elevation, but was not associated with his spinal problem (AR 126). Dr. Moffett referred him to the emergency room for evaluation of his testicular problem, since he was concerned his pain represented testicular torsion or epididymitis (AR 126).

On March 11, 2003, Dr. Snow noted that Moffett's symptoms seemed to increase over time instead of getting better (AR 153). While Dr. Walter had recommended repeat surgery, Moffett wanted to give it more thought before he committed to a second surgery (AR 153). Dr. Snow reported that Moffett continued to have pain in the lumbosacral area with decreased range of motion and his condition was essentially unchanged (AR 153). Dr. Snow recommended he obtain a second opinion from the Cleveland Clinic (AR 153).

On April 10, 2003, Dr. Walter reported that Moffett's wound continued to heal well, he had 5/5 strength throughout his lower extremities, ambulated normally, and had no signs of residual radicular weakness (AR 142). Dr. Walter noted that Moffett had developed pain radiating around the left side of his hip, left groin and testicle (AR 142). Previous evaluation of his testicle showed no vascular compromise, but his testicular symptoms continued to be a problem (AR 142). Dr. Walter refilled his Vicodin prescription, and recommended a post-operative MRI to determine if there was any residual compression (AR 142). He further recommended Moffett be evaluated by a urologist for his testicular pain since he concluded that it was not associated with his spinal problem (AR 142).

Dr. Snow reported on April 24, 2003 that Moffett continued to have pain in his low back with some numbness in his leg, as well as pain in his testicle (AR 152). He needed Vicodin to sleep and had been taking Celebrex (AR 152).

4

On June 30, 2003, Dr. Snow reported that Moffett continued to have lower lumbosacral pain with some decrease in motion which had "been there for sometime" (AR 151). He reviewed an x-ray of Moffett's lumbar spine taken on May 16, 2003, which revealed no evidence of degenerative changes and that his disc spaces were maintained normally with good alignment (AR 151). Dr. Snow refilled his Lortab, encouraged him to stay off his feet as much as possible, and use a muscle relaxer and anti-inflammatory (AR 151).

An MRI conducted July 16, 2003 revealed six lumbar type vertebral bodies, L6 being transitional in nature (AR 156). There was some minor posterior broad based disk bulging at the L5-6 level, however, there was no lumbar disk protrusion or spinal stenosis (AR 156). His prior laminectomy appeared unremarkable (AR 156).

On July 24, 2003, Moffett reported continuing back pain radiating down his left leg and testicular pain (AR 149). Dr. Snow found his testicles unremarkable, and his back was tender in the lumbosacral area (AR 149). He noted that Moffett's MRI was negative for any stenosis (AR 149). He changed his medication regime, prescribing Skelaxin, Elavil, and Motrin, in addition to the Vicodin (AR 149). Dr. Snow authorized the Vicodin for six hour intervals, but cautioned Moffett to take the other medications first before resorting to the Vicodin (AR 149).

On August 11, 2003, Moffett was evaluated by David Dulabon, M.D., a urologist, for testicular pain (AR 159). Dr. Dulabon found that his symptoms were consistent with early epididymitis, and prescribed soaks, analgesics, and Septra DS for two weeks (AR 159).[1]

Moffett's treatment records from Dr. Snow dated August 13, 2003 noted complaints of low back pain and testicular pain, and his medications were refilled (AR 146). Treatment records dated November 19, 2003 noted back pain and spasm, and Vicodin was prescribed (AR 148).

Finally, on January 15, 2004, Dr. Snow assessed Moffett with chronic low back pain and refilled his medications (AR 145).

---

[1]"Epididymitis" is an inflammation of the epididymis, which is a small oblong body resting upon and beside the posterior surface of the testes. *See Taber's Cyclopedic Medical Dictionary p. E-45 (13th ed. 1977).*

Moffett, represented by counsel, testified at the hearing held by the ALJ on February 18, 2004 (AR 166-189).  He testified that he first sought treatment for his back pain in 1997, and received epidurals and physical therapy until 1998 (AR 176).  He experienced pain radiating into his buttocks and down his legs, and also suffered from testicular (AR 178).  Standing or sitting for prolonged periods exacerbated his back pain, and he was only able to stand or sit for approximately twenty minutes (AR 179).  He was capable of lifting sixteen pounds (AR 181).

Moffett further testified that he took ten to twelve Vicodin per day, was unable to drive, concentrate or read, and was forgetful (AR 177, 180-181).  To further control the pain, he assumed a "prayer position" approximately five to six hours per day, which consisted of him laying across an ottoman with both knees on the floor (AR 182).  He lived with his parents and performed no chores (AR 177).

Joseph Kuhar, a vocational expert ("VE"), also testified at the hearing held by the ALJ. He was asked to consider an individual of Moffett's age, education, and vocational background, who had the capacity to perform work at the sedentary exertional level remaining seated most of the workday, with a sit/stand option at thirty minute intervals, and who must avoid exposure to hazardous machinery, vibration or exposed heights (AR 187).  The vocational expert testified that such an individual could perform the jobs of a food sorter and routing clerk (AR 188).  The vocational expert further testified that such an individual would not be able to maintain the identified jobs if he were in the "prayer position" for approximately two to four hours during the workday (AR 188).

The ALJ subsequently issued a written decision which found that Moffett was not entitled to a period of disability or disability insurance under the Act (AR 15-22).  His request for review by the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 4-7).  He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported

by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). In order to be entitled to DIB under Title II, a claimant must establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Moffett met the disability insured status requirements of the Act through the date of his decision (AR 21).

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not
> engaged in "substantial gainful activity" and (2) that he suffers
> from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S.
> 137, 140-41 (1987). If the claimant shows a severe medical
> impairment, the [Commissioner] determines (3) whether the
> impairment is equivalent to an impairment listed by the
> [Commissioner] as creating a presumption of disability. *Bowen*,
> 482 U.S. at 141. If it is not, the claimant bears the burden of
> showing (4) that the impairment prevents him from performing the
> work that he has performed in the past. *Id.* If the claimant satisfies
> this burden, the [Commissioner] must grant the claimant benefits
> unless the [Commissioner] can demonstrate (5) that there are jobs

7

in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

In the instant case, the ALJ found that Moffett's degenerative disc disease, status post lumbar laminectomy and testicular pain were severe impairments, but determined at step three that he did not meet a listing (AR 17-18). He further determined that Moffett could not return to his past relevant work, but retained the residual functional capacity to perform sedentary work, remaining seated most of the workday, with a sit/stand option at thirty minute intervals, and no exposure to hazardous machinery, vibration or exposed heights (AR 19). The ALJ additionally found that Moffett's allegations relative to his functional limitations were not entirely credible (AR 21). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Moffett claims that the medical evidence establishes that he is precluded from performing any gainful employment and therefore the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence. He challenges the ALJ's rejection of Dr. Ferretti's opinion, a consultative examiner who examined him pursuant to the request of the Commissioner, who concluded that he could only lift two to three pounds, stand and walk for one hour or less, sit for one hour, and occasionally perform postural maneuvers (AR 122-123). Moffett claims that because there was no medical source opinion that contradicted Dr. Ferretti's RFC assessment, the ALJ's rejection of his opinion was improperly the product of the ALJ's own lay opinion.

An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(2). In making this determination, the ALJ must consider all evidence before him. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999). Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant

8

> evidence in the case record, including medical evidence and
> relevant nonmedical evidence, such as observations of lay
> witnesses of an individual's apparent symptomatology, an
> individual's own statement of what he or she is able or unable to
> do, and many other factors that could help the adjudicator
> determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5.  While the ALJ must consider all of the medical

evidence of record, a consulting physician's opinion is not entitled to the same amount of

deference accorded a treating physician's opinion.  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd

Cir. 1993).  Thus, in the absence of a controlling opinion of a treating physician, the ALJ has a

great deal of discretion in determining what weight to accord to that evidence.  *See* 20 C.F.R. §

404.1527(d).  He may choose between contradictory medical opinions or reject a medical opinion

that is contradicted by other evidence of record.  *See Plummer v. Apfel,* 186 F.3d 422, 429 (3rd

Cir. 1999); *Mason,* 994 F.2d at 1066.

      Here, the ALJ fashioned Moffett's RFC consistent with the above standards.  He

concluded that Moffett retained the RFC to perform work that did not require exertion above the

sedentary level, remaining seated most of the workday, with a sit/stand option at thirty minute

intervals, and must avoid exposure to hazardous machinery, vibration or exposed heights (AR

187).  The ALJ observed that Moffett's leg strength was rated as 4/5 on the left and 5/5 on the

right, and there was no indication of muscle atrophy, joint effusion or discoloration (AR 19).  He

noted that the weight restrictions were not imposed by Dr. Ferretti, but by Moffett's surgeon at

discharge (AR 19).  He further noted that Dr. Ferretti limited Moffett to occasional postural

activities since he had not yet been discharged by his surgeon (AR 19).  Finally, the ALJ

observed that Dr. Ferretti's restrictions on sitting and standing were based on Moffett's

subjective complaints of pain (AR 19).

      All of these findings are supported by the record, and we reject Moffett's argument that

the ALJ engaged in improper speculation in rejecting Dr. Ferretti's report.  We observe that Dr.

Walter, Moffett's treating physician, only instructed Moffett to avoid heavy lifting, strenuous

activity, and bending or sitting for prolonged periods of time (AR 105).  At his follow-up

appointment in February 2003, Moffett exhibited good strength bilaterally in his lower extremities and his gait was essentially normal (AR 125). In April 2003, he had 5/5 strength throughout his lower extremities, he ambulated normally, and had no signs of radicular weakness (AR 142).

Moreover, although Moffett continued to complain of back pain, Dr. Snow, Moffett's primary care physician, did not impose any functional limitations, and there is no indication in his treatment notes that Moffett's ability to sit, occasionally stand and walk, and lift up to ten pounds is precluded. An x-ray of his lumbar spine taken in May 2003 showed no evidence of degenerative changes, and his disc spaces were normal with good alignment (AR 151). An MRI dated July 16, 2003 revealed no lumbar disc protrusion or spinal stenosis (AR 156). The record is conspicuously devoid of any medical evidence demonstrating that Moffett's impairments resulted in physical limitations apart from those credited by the ALJ.[2]

Moffett further challenges the ALJ's credibility determination. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). Subjective complaints must be seriously considered, whether or not they are fully confirmed by the objective medical evidence. *See Smith v. Califano*, 637 F.2d 968 (3rd Cir. 1981). The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *Baerga v. Richardson,* 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F2d 871, 873 (3rd Cir. 1983).

---

[2]We reject Moffett's claim that the ALJ had a duty to develop the record by ordering another consultative examination to assess his present functioning. *Plaintiff's Brief* p. 7. The ALJ's duty to order a consultative examination does not arise unless there is insufficient medical evidence about a claimant's impairment to enable the ALJ to make the disability decision. 20 C.F.R. § 404.1517. We see no basis for ordering a second consultative examination in this case since we conclude there was sufficient evidence to support the ALJ's disability determination.

Here, the ALJ found that while the medical records were consistent in recording complaints of pain, Moffett's subjective complaints of intractable pain were not entirely credible (AR 18). The ALJ found that his physical examinations were essentially unremarkable, and his treating physicians' records contained no complaints relative to complications or symptoms caused by his medications (AR 18). Finally, he observed that although Moffett alleged that he had been disabled by pain since December 31, 2000, there was no record of any complaint or treatment prior to September 2002, when he filed his application for disability benefits (AR 18).

We agree with the ALJ that Moffett's complaints of radicular pain are inconsistent with the medical records, which primarily reflect complaints of low back pain. Dr. Walter found no radicular weakness following surgery, and in April 2003 Moffett had no signs of radicular weakness (AR 142). Moffett's radiating pain in his groin and leg was diagnosed as epididymitis, for which he received treatment (AR 159). Likewise, the medical records are devoid of any complaints of debilitating side effects caused by his medication, or pain so severe as to require Moffett to be in a "prayer position" for several hours daily. In sum, find that the ALJ's credibility determination is supported by substantial evidence.

Finally, Moffett contends that ALJ improperly evaluated the vocational expert's testimony. The law is well established that "[w]hile the ALJ may proffer a variety of assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra. See also Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 (3rd Cir. 1983).

Here, Moffett generally argues that the ALJ's hypothetical did not accurately portray the extent of his functional limitations supported by the evidence.  To the extent that he claims the hypothetical was contrary to Dr. Ferretti's RFC assessment, we have already determined that the ALJ's rejection of Dr. Ferretti's assessment with respect to Moffett's functional limitations was supported by substantial evidence; accordingly, it was not error for the ALJ to rely on the vocational expert's testimony.  We therefore find no error in this regard.

## IV. CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DELANO J. MOFFETT,                      )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )          Civil Action No. 05-199 Erie
                                        )
JO ANNE B. BARNHART,                    )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )

## <u>ORDER</u>

AND NOW, this 24th day of April, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 9] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 11] is GRANTED.  JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Delano J. Moffett.  The clerk is directed to mark the case closed.

                                        s/ Sean J. McLaughlin
                                        United States District Judge

cm: All parties of record.

13